In the Matter of the Application of CHARLES CARY, Petitioner, for an Order of Peremptory Mandamus against FRANK X. SCHWAB, ROSS GRAVES, JOHN H. MEAHL, FRANK C. PERKINS and WILLIAM F. SCHWARTZ, as Mayor and Councilmen of the City of Buffalo, Composing the Council of Said City, Defendants.

Supreme Court, Erie Special Term, July 15, 1924.

Municipal corporations — city of Buffalo — application for peremptory order of mandamus requiring city council to reconsider resolution providing for widening and paving of avenue and to call special election — referendum provision of Buffalo city charter (Laws of 1914, chap. 217, § 31) not applicable to resolution directing widening of avenue and paving of increased width — application for mandamus order denied.

A resolution by the council of the city of Buffalo directing the widening of an avenue and the paving of the increased width, does not appropriate any money, does not incur or provide for the incurring of any expense and does not dispose of any property or right of the city and, therefore, the referendum provision of the charter of the city of Buffalo (Laws of 1914, chap. 217), as contained in section 31 thereof, has no application.

Accordingly, an application for a peremptory order of mandamus requiring the city council to reconsider its action taken in adopting and passing a resolution directing the widening of Delaware avenue and the paving of the increased width and requiring the calling of a special election should be denied.

APPLICATION for a peremptory order of mandamus.

*Thurman W. Stoner* (*Carlos C. Alden*, of counsel), for the petitioner.

*Frederic C. Rupp* (*Jeremiah J. Hurley*, of counsel), for the defendants.

PIERCE, J. This is an application for a peremptory order of mandamus requiring the council of the city of Buffalo to reconsider its action taken on the 19th day of March, 1924, in adopting and passing resolutions numbered 117, 118, 119 and 120, being found on pages 705 and 706 of the proceedings of the council for that day, and, if not repealed, requiring it to call a special election, at which shall be submitted to the voters of the city of Buffalo the question of the approval of said resolutions. Upon the return day of the order to show cause, William S. Rann, of the firm of Rann, Vaughan, Brown & Sturtevant, appeared for several interested property owners owning property on Delaware avenue, and asked that said property owners be allowed to intervene as parties in said proceedings. This application was denied, but with the right to have affidavits prepared by said property owners filed with and made a part of the answering affidavits of the city of Buffalo, and he, as attorney, allowed to participate in the argument and to file a brief in conjunction with the attorney for the city.

This application is made by Charles Cary, a property owner and resident of the city of Buffalo, residing on Delaware avenue within the territory affected by the proceeding attacked. Papers herein show that in or about the month of October, 1923, a majority of the residents owning property on Delaware avenue, within the limits of the improvement sought to be made, petitioned the council of the city of Buffalo, requesting said body to take such proceedings as were necessary to widen Delaware avenue ten feet on either side, between the northerly line of Mohawk street and the southerly line of Allen street. On the 28th day of November, 1923, the assessors of the city of Buffalo certified that the petition above referred to for the improvement and widening of the roadway of Delaware avenue was signed by a majority of the resident owners of the lands fronting on that part of the street owning and representing at least two-fifths of all of the lands so situated, and that the lands have not been divided for the purpose of effecting such majority. On the 10th day of December, 1923, the council of the city of Buffalo unanimously adopted a resolution to pave Delaware avenue ten feet wider on each side from the north curb line of Mohawk street to the south curb line of Virginia street, and to pave nine feet wider on each side from the north curb line of Virginia street to the south curb line of Allen street so as to create a width of sixty feet between the curbs; and directing the commissioner of public works to prepare plans and specifications and to advertise for sealed proposals for doing such work. On the 5th day of March, 1924, the commissioner of public works reported to the council the receipt of bids for paving Delaware avenue ten feet wider

on each side, from the north curb line of Mohawk street to the south curb line of Virginia street, so as to create a width of sixty feet; and also for paving Delaware avenue from the north curb line of Virginia street to the south curb line of Allen street so as to create a width of sixty feet between curbs.  On the 12th day of March, 1924, the council of the city passed resolutions ordering Delaware avenue paved ten feet wider on each side between Mohawk street and Virginia street, and directing the expense for such improvement to be assessed, and the board of assessors were directed to make an assessment for the expense of such pavement upon the real estate of the city of Buffalo benefited by such improvement; and that Delaware avenue, between Virginia street and Allen street, be paved, and that the expense of such pavement be assessed by the board of assessors of the city against the property benefited by such improvement; that said resolution be published in the official papers three times before March 19, 1924, which was done, and on said March nineteenth said council duly adopted the necessary resolutions for paving said street and for assessing the expense of such pavement against the property benefited; that thereafter and on the seventeenth and eighteenth days of April and within thirty days after the 19th day of March, 1924, a petition or paper was filed with the city clerk of the city of Buffalo, claimed to be signed by 14,676 electors of said city, verified as required by section 31 of the charter of the city of Buffalo (Laws of 1914, chap. 217), and that petitioner in this proceeding was one of the signers to said petition; that the paper was signed by the required number of names to entitle the council to rescind its action taken on the 19th day of March, 1924, relative to the pavement of Delaware avenue, or to order an election as required by said provision of the charter, and that the council neglected and refused to take the necessary and required action to result in the calling of a special election for the purpose of voting upon the question as to whether said resolution for widening and paving Delaware avenue should be rescinded.  The answering affidavits tend to show that Delaware avenue is of insufficient width to accommodate the vehicular traffic upon the street; that the section of the street sought to be improved has in the last few years materially changed from a residential to a business section; that in consequence of such change, the assessed valuation has been increased very materially, such increase varying from 100 to 400 per cent; that a large majority of the owners of the property fronting upon that portion of the street sought to be widened and paved are in favor of such improvement and petitioned the council to take the necessary steps to bring about such change. On the other hand, the petitioner contends that such change is not

necessary, and, in any event, that the widening of the street will result in the removal and possible destruction of many shade trees planted along the street between the present curb and sidewalk, and that this is, by indirection, disposing of property or rights of the city, and that the referendum provision, as contained in section 31 of the charter (Laws of 1914, chap. 217, § 31, as amd. by Laws of 1919, chap. 133) is applicable, and that an order of mandamus should issue, compelling the council to take such necessary steps to entitle the qualified voters of the city to vote upon the proposition as to whether said resolutions ordering the widening and paving of the street should be operative or otherwise.

" Except as otherwise provided by law, the city shall have full and exclusive control over its streets and highways  *  *  *." Buffalo City Charter, § 5 (Laws of 1914, chap. 217, § 5, as amd. by Laws of 1916, chap. 260).

" The council shall, in addition to the authority conferred under general laws, from time to time enact ordinances:  *  *  * To prevent the encroachment upon, projections over, injury to, or the encumbering of streets, alleys, wharves and public grounds; *  *  *."   Id. § 13, subd. 7 (Laws of 1914, chap. 217, § 13, subd. 7, as amd. by Laws of 1923, chap. 352).

" The city shall remove all encroachments upon, projections over and obstructions on the public grounds, streets, alleys and wharves, and abate all nuisances; and cause the expense of such removal to be assessed upon the lands upon or in front of which such encroachment, projection, obstruction or nuisance was or upon the parcels of land benefited by such removal  *  *  *."   Id. § 364 (Laws of 1914, chap. 217, § 364, as added by Laws of 1916, chap. 260).

It will thus be seen that a primary, positive duty is placed upon the city to keep and maintain its streets and public places in a reasonably safe condition. The fundamental and primary use of a street is for travel and not for ornamentation. *Peace* v. *McAdoo*, 46 Misc. Rep. 295.

The fee or easement in a strip of land is acquired for the purpose of affording a place where the public may pass from one place to another, and such strip of land can properly be divided into roadway, sidewalk, and the space between the paved or traveled portion of the street and the sidewalk or building line can be used for proper street uses, such as the maintaining of grass plots, planting of shade trees, placing of stepping stones, hitching posts, etc., so long as such are not a hindrance or an obstruction to travel; and whenever changed conditions are such as to require the widening of the pavement or the sidewalk, such change does not amount to a disposition of property as is contemplated by section 31 of the charter above

referred to, but is simply a utilization of a greater portion of the street for the purpose for which the fee or easement was acquired; and whenever, to meet the changed conditions, either of a city or the changed method of transportation, a change is reasonably required, the city is responsible in damage for failure to make such alteration in the street. *Stern* v. *International Ry. Co.*, 220 N. Y. 284.

The proceeding for widening and paving Delaware avenue was set in motion by the petition of a majority of the abutting property owners, resident on the street. The expense of such change is to be assessed against the abutting property owners and paid by them and not by general taxation against the city. This creates no obligation against the city within the meaning of the charter. *Kronsbein* v. *City of Rochester*, 76 App. Div. 494.

The city of Buffalo,. as a whole, has no right to determine the improvements which shall be placed in any given street or limited territory of the city's area, the entire expense of which is to be borne by the property affected. Provisions similar to the one contained in section 31 of the charter of the city of Buffalo have been passed upon by courts in various states, and it has uniformly been held that the referendum provisions did not apply to local improvements. Constitutional or charter provisions requiring referendum votes, under certain conditions, were involved in each of the following cases, and in each it was held that they had no application to local improvements where the expense was borne by a limited area or by the property benefited: *Whitmore* v. *City of Hartford*, 96 Conn. 511; 114 Atl. Rep. 686; *Starbuck* v. *City of Fullerton*, 168 Pac. Rep. (Cal.) 583; *Lewis* v. *Town of Pilot Mountain*, 170 N. C. 109; *Matthews* v. *Ellensburg*, 73 Wash. 272; *Chase* v. *Kalber*, 153 Pac. Rep. (Cal.) 397; *Ainsworth* v. *Arizona Asphalt Paving Co.*, 18 Ariz. 242; 158 Pac. Rep. 428; *Ex parte Farnsworth*, 61 Tex. Crim. Rep. 342, 353; *Southwestern Telegraph & Telephone Co.* v. *City of Dallas*, 104 Tex. 114; *Perrault* v. *Robinson*, 29 Ida. 267.

While it is undoubtedly true that an abutting property owner has a qualified interest in trees in front of his premises to such an extent that he can recover damage to his property caused by the wrongful interference with the shade trees, he has no such interest and the city has no proprietary interest which prevents the city from improving the street to the extent of removing the trees so as to afford the full benefits to the public which were contemplated when the fee or easement to the street was acquired, and to meet the changed conditions incident to the growth of the city, the increase in travel and the changed means of travel. *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313.

The resolution directing the widening of Delaware avenue and

the paving of the increased width, does not appropriate any money, does not incur or provide for the incurring of any expense, and does not dispose of any property or right of the city. Therefore, the referendum provision of the charter, as contained in section 31 thereof, has no application. The council of the city of Buffalo was under no obligation to rescind its action of March nineteenth in ordering the widening of Delaware avenue and the paving of the increased width, and was under no obligation or legal duty to provide for the submission of such question to the electors of the city.

The application for a peremptory mandamus is denied, but inasmuch as the petitioner undoubtedly acted in good faith and under the honest belief that the resolution disposed of property of the city, such denial is without costs.

Ordered accordingly.